UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CR-20396-MOORE/MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTHONY G. COOPER,

    Defendant.
_____/

## REPORT AND RECOMMENDATION
## REGARDING PETITION FOR VIOLATION OF SUPERVISED RELEASE

In January, 2013, the Honorable K. Michael Moore sentenced the Defendant, Anthony Cooper, to a period of imprisonment, followed by a term of supervised release. [DE 82]. Cooper came under the supervision of the Probation Office on April 14, 2014, and on July 29, 2015, his supervising Probation Officer, Teresa Graham, filed a Petition to revoke Cooper's supervised release because he committed the crime of aggravated battery while on supervision. [DE 132].[1] Judge Moore referred that Petition to me and on October 2, 2015, I held an evidentiary hearing. [DE 135].[2] For the following reasons, I recommend that the Court find Cooper not guilty of the charged violation.

---

[1] The Probation Officer later submitted a memorandum to the Court requesting that the Petition be dismissed and that request remains pending. [Tr. p. 14]. After the evidentiary hearing the Probation Officer filed a Superseding Petition that adds a new charge that Cooper has violated the terms of his supervised release. This Report and Recommendation addresses only the charge filed in the July 29, 2015 Petition.

[2] The transcript of that hearing has been filed at docket entry 152 and is cited here as "Tr. p. __".

1

1.  **Factual findings**

On July 23, 2015, City of Miami patrol officer Gary Sampson arrested Cooper for the crime of aggravated battery, in violation of Florida Statute section 784.045(1)(a). That statute provides:

> (1) (a) A person commits aggravated battery who, in committing battery:[3]
>
> 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement, or
>
> 2. Uses a deadly weapon.

The government charges that Cooper committed aggravated battery on July 23, 2015, by using a deadly weapon. In particular, it charges that Cooper used a weapon to cut a female victim on her shoulder, and that in doing so he violated the terms of his supervised release. [Tr. 44-48].[4]

Officer Sampson testified that on July 23, 2015, he was on patrol in a marked City of Miami police car in the area of Northwest 2nd Avenue and 63rd Street, when a black woman flagged him down ("the victim"). [Tr. p. 16-7, 25]. The woman appeared upset and reported that she had just been choked and cut by a black male. She pointed to a cut on her left shoulder that the officer described as a "fresh" and an "open wound." [Tr. p. 18-9]. Officer Sampson provided no further information about this wound and there otherwise was no other information about the cut. For example, it is unknown whether the cut was bleeding, how long or deep it was, whether it was a straight cut or uneven or whether the cut required

---

[3] Felony battery is defined as ". . . intentionally touch[ing] . . . another person against the will of the other [] and . . . cause[ing] great bodily harm, permanent disability or permanent disfigurement." Fla. Stat. 784.041 (1) (a) and (b).

[4] It is a condition of Cooper's supervised release that he not commit a crime while on supervision. [DE 82, p. 3].

2

medical treatment. Importantly, the victim did not say how she was cut nor did she indicate that a weapon of any kind was used to cut her. In particular, she did not say that she had been cut by a box-cutter. [Tr. p. 27-8, 34]. There is no evidence she needed medical attention.

The victim told Officer Sampson that the man who assaulted her was down the street, and she pointed to a vacant lot, possibly 150 feet away, where Cooper was seated. [Tr. pp. 18, 30]. The Officer went up to Cooper and saw that he had a box-cutter hanging from his pocket. Officer Sampson took custody of the box-cutter and arrested Cooper. [Tr. p. 19]. According to the Officer, Cooper told him that "nothing had happened." [Tr. p. 20].

Shortly thereafter, a black male rode up on a bicycle and told Officer Sampson that he saw Cooper and the victim arguing in the middle of the street. During that argument Cooper grabbed the victim by the throat and the witness intervened and separated the two. The witness further said that although Cooper had a box-cutter, he did not see Cooper cut the victim. [Tr. pp. 19, 31-33].

Officer Sampson testified that he thought Cooper might be "under the influence" of alcohol or some kind of drug, because at the police station he spoke loudly and used profane language. [Tr. pp. 20-1]. The Officer could identify no other reason for thinking Cooper might have been under the influence of drugs or alcohol. [Tr. p. 21]. Officer Sampson also thought the victim appeared to be "under the influence" and might be homeless. [Tr. p. 26]. Other than his initial contact with the victim and the witness, Officer Sampson had no further communication with them. He did get both of their names and noted them on his arrest

report; both showed the Officer identification. [Tr. p. 27, 31-2].[5]

Officer Sampson charged Cooper with aggravated battery because he believed Cooper had used a weapon of some sort to cut the victim, as the cut appeared to the Officer to have been made by an object, as opposed to a person's hand. [Tr. p. 28-9].

Upon his release from state custody, Cooper notified his Probation Officer, Ms. Graham, of his arrest. [Tr. p. 7-8]. Cooper advised that he had gone to the area where he was arrested to perform voluntary community service at a near-by church, and Ms. Graham later confirmed this with the pastor of the church. [Tr. p. 12-3]. On August 24, 2015, after the victim failed to appear at the Miami-Dade County State Attorney's Office for a pretrial conference, that office no-actioned the aggravated battery charges for which Cooper had been arrested; that is, it chose not to file formal charges against Cooper. [Tr. p. 9].

Stuart Sands, an investigator with the Office of the Federal Public Defender could find no record of the victim in available databases. [Tr. p. 37-9]. Mr. Sands did locate the eye witness, who refused to speak with him. Based on the way the witness communicated, and the appearance of his residence, Mr. Sands had the impression that the witness might suffer from some sort of mental disability, and may have be living in an assisted living facility or group home. [Tr. p. 39-42].

2. Analysis

The Petition accuses Cooper of having committed the crime of aggravated battery, in violation of Florida Statute section 784.045, without further specification. The government has the burden of proving this violation by a preponderance of the evidence. *Johnson v.*

---

[5] Officer Sampson himself was arrested in 2014 and those charges were later dismissed. He also received hour reprimands while employed at the City of Miami Police Department and was the subject of a complaint which the Department found to be inconclusive. [Tr. pp. 21-23].

4

*United States*, 529 U.S. 694, 700 (2000); 18 U.S.C. § 3583(e)(3).

At the evidentiary hearing, the government made clear that its accusation against Cooper is limited to the charge that Cooper violated Florida Statute section 784.045(1)(a)(2) by using a deadly weapon to cut the victim. The government cited Florida courts that have held that a deadly weapon is "an instrument" that can cause great bodily harm. *See Smith v. State*, 969 So. 2d 452, 454 (1st DCA 2007). [Tr. p. 45]. The government concedes that if Cooper used his hands to choke the victim that he would not be committing the crime of aggravated battery with a deadly weapon because his hands would not be considered an instrument as contemplated by section 784.045(1)(A)(2). [Tr. 44-46].[6]

Thus, the question presented is whether the government established, by a preponderance of the evidence, that on July 25, 2015, Cooper used an instrument to cut the victim's shoulder, causing her great bodily harm, permanent disability or disfigurement. I believe the answer is no.

The evidence that supports the government's claim is the hearsay testimony of the victim (as told by Officer Sampson) that Cooper cut her, and the presence of a "fresh" cut on her shoulder. As an initial matter, the government has not shown that this cut amounted to great bodily harm or caused permanent disability or disfigurement, as it must, to first establish that Cooper committed a felony battery. *See* Fla. Stat. § 784.041(1)

---

[6] The government elected to not charge Cooper with having committed aggravated battery in violation of section 784.045(1)(a)(1). This is consistent with Florida law, which holds that evidence of choking, standing alone, is inadequate proof of aggravated battery under section 784.045(1)(a)(1). *Smith v. State*, No. 4D13-512, 2015 WL 5603453, at *2 (Fla. 4th DCA Sept. 24, 2015) (court reversed conviction for aggravated battery where evidence showed that defendant choked victim until he lost consciousness, but victim only had a scratch on his arm, and there was no evidence that the victim sought medical treatment or expert testimony that defendant's actions could have resulted in serious injury to victim).

5

In this context, "great bodily harm means great as in distinguished from slight, trivial, minor, or moderate harm. . . ." *C.A.C. v. State*, 771 So.2d 1261, 1262 (Fla. 2nd DCA 2000) (holding that scratches, swelling and puncture marks caused by the defendant stabbing the victim with a fork numerous times did not constitute great bodily harm.) (quotation marks and citation omitted). Here, the length and depth of the cut is unknown, and we do not know whether it required stiches. On this record, the government has failed to prove, even by a preponderance, that the cut on the victim's shoulder was severe enough to fall within the definition of great bodily harm.

In addition, there is inadequate evidence that Cooper used an instrument to cut the victim's shoulder. The evidence that supports the government's charge is: (1) Officer Sampson's testimony that, from its appearance, the cut was one that had to be caused by an instrument, and (2) the fact that Cooper was in possession of a box-cutter, which certainly is capable of cutting human skin and tissue.

Cooper's mere possession of the box-cutter is not proof that he used it to cut the victim. Notably, the victim did not claim that Cooper used that device to cut her, and the witness reported that he did not see Cooper do so. Further, Officer Sampson's cursory description of the wound does not offer enough information to support the inference that the victim was cut with the box cutter. On this record it is entirely possible that the wound was caused by something other than a box-cutter, but this too is a matter of speculation. Although Officer Sampson stated his opinion that the wound looked like it was made by an object (as opposed to human hands), he was unable to articulate why he thought so.

On this record, I find that the government has not shown that it is more likely than not that Cooper used an instrument to cut the victim's shoulder, and that in doing so he caused

6

her great bodily harm, permanent disability or disfigurement, in violation of Florida Statute section 784.045(1)(A)(2).

## 3. Recommendation and objections

For the reasons stated above, I respectfully **RECOMMEND** that the Court find that the government has failed to prove that the Defendant, Anthony G. Cooper, violated the conditions of his supervised release by committing the crime of aggravated battery in violation of Florida Statute section 784.045(1).

The parties may file written objections to this Report and Recommendation with the Honorable K. Michael Moore within **fourteen days** of the date of this Report and Recommendation. Failure to timely file objections shall bar the parties from attacking on appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers at Miami, Florida this 26th day of October, 2015.

CHRIS MCALILEY
UNITED STATES MAGISTRATE JUDGE

*Copies*:   The Honorable K. Michael Moore
All counsel of record
U.S. Probation Officer Teresa Graham